UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE INTERNATIONAL UNION
OF OPERATING ENGINEERS LOCAL 30
BENEFITS FUNDS,

                               Plaintiffs,

     -v-

NYACK HOSPITAL,

                           Defendant.

Case No. 11-CV-2341 (KMK)

OPINION AND ORDER

Appearances

Dana Lynne Henke, Esq.
Barnes, Iaccarino & Shepherd LLP
Elmsford, NY
*Attorney for Plaintiffs*

James Stuart Frank, Esq.
John Francis Fullerton, III, Esq.
Margaret Casey Thering, Esq.
Epstein Becker & Green, P.C.
New York, NY
*Attorneys for Defendant*

KENNETH M. KARAS, District Judge:

Plaintiffs, the Trustees of the International Union of Operating Engineers, Local 30

Benefit Funds, bring this action to enforce an arbitration order obtained against Defendant

Nyack Hospital, an employer that made contributions to the Funds. (Pl.'s Mem. 1–2.) The

arbitration order requires that Plaintiffs be allowed to audit Defendant's books and records. (*Id.*)

Defendant never appeared at the arbitration, because, in Defendant's view, it had never agreed to

arbitrate such disputes with Plaintiffs, and, in any event, Plaintiffs failed to follow the required

procedures to initiate an arbitration. Plaintiffs have moved to confirm the arbitration award, and

Defendant has cross-moved to vacate the award and dismiss the Complaint. For the reasons

below, Plaintiffs' motion is denied and Defendant's cross-motion is granted.

## I. Background

Plaintiffs are the fiduciaries of jointly administered multi-employer, labor-management trust funds.  (Compl. ¶ 5.)  The International Union of Operating Engineers, Local 30 Benefit Funds (the "Funds") are established and maintained jointly by the International Union of Operating Engineers, Local 30 (the "Union") and various employers pursuant to the terms of various collective bargaining agreements and trust indentures.[1]  (*Id.*)  Defendant is a non-profit hospital in Nyack, New York, and is a signatory to a Collective Bargaining Agreement ("CBA") with the Union.  (Def.'s Mem. 2–3.)  The CBA governs the terms and conditions of employment for Defendant's maintenance employees.  (*Id.*)  Plaintiffs also have a Trust Agreement (also referred to as the "Trust Indenture") and a Collection Policy that define the operation of the Funds.  (Compl. ¶¶ 11–12.)  As Plaintiffs acknowledge, Defendant is not a signatory to any of these documents.  (Pl.'s Reply 7.)

Plaintiffs allege that Defendant is required to "submit contribution reports setting forth the hours that each of its employees worked and the amount of contributions due pursuant to the rate schedules set forth in the CBA for all work performed by its employees covered by the CBA and to remit such monetary contributions in accordance with the CBA and the rules and regulations established in the Trust Indenture."  (Compl. ¶ 11.)  Plaintiffs further allege that the "CBA and/or Trust Indenture require the [Defendant] to submit to an audit to ensure that the proper contributions were remitted to the Funds."  (Compl. ¶ 12.)  But, contend Plaintiffs, they

---

[1] Plaintiffs state that the Funds are formed in accordance with Section 3(21)(A) and Section 502(a)(3) of the Employee Retirement Income Security Act, commonly known as "ERISA," 29 U.S.C. §§ 1002(21)(A) and 1132(a)(3), and that the agreements were made in accordance with Section 302(c)(5)(1) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5).  (Pl.'s Mem. 1.)

sent Defendant an audit request, and Defendant refused to submit to the required audit.  (Compl. ¶ 13.)

In response to this refusal, Plaintiffs allege that they "submitted a Demand for Arbitration to Arbitrator Roger E. Maher pursuant to the Trust Indenture and the Fund's Collection Policy," and the arbitrator then set an arbitration date and "noticed the Parties accordingly."  (Compl. ¶ 14–15.)  The arbitrator held a hearing, but Defendant did not appear.  (Compl. ¶ 16–17.)  On August 9, 2010, the arbitrator issued a written opinion that found in favor of Plaintiffs.  (Opinion and Award of Arbitrator ("Award") (Dkt. No. 19) 3.)

The Award begins by invoking a different source of authority from that alleged by Plaintiffs in their Complaint:  "Pursuant to the provisions of the *Collective Bargaining Agreement* between the [Defendant] and the [Union] . . . and the designation of the undersigned as Impartial Arbitrator to determine disputes concerning claims arising from payments due to the Benefit Funds described in said written contract," states the Award, "the undersigned Arbitrator was called upon to hear and determine a controversy involving claims by the [Plaintiffs] that the Funds are unable to ascertain the amount of contributions due it as the [Defendant] has not allowed an audit of its books."  (Award 1 (emphasis added).)  The Award next notes that an arbitration hearing was held on August 3, 2010, and counsel for Plaintiffs appeared at the hearing and "submitted proof that [Defendant] had legally sufficient notice of this proceeding and the claims against [it]."  (Award 2.)  The Award then very briefly describes the nature of the controversy, stating that "[t]he testimony of the auditor employed by the [Plaintiffs] established that an audit of the books and records of [Defendant] had been attempted on numerous occasions but without success."  (Award 2.)  Ultimately, the Award orders Defendant "to forthwith produce any and all books and records for the audit period 1/16/2003 through 1/15/2007," and it

also awards $3,000 in costs to Plaintiffs.  (Award 3.)

On January 19, 2011, Plaintiffs filed a Complaint in the Eastern District of New York alleging that Defendant has failed to comply with the Award.  (Compl. ¶ 22.)  Plaintiffs requested that the Award be confirmed and that they be granted attorneys' fees, costs, and other related relief.[2]  (Compl. ¶¶ 20–22.)  By agreement, venue was transferred to this Court.  (Dkt. No. 6.)  The Parties conducted discovery, and on September 14, 2012, Plaintiffs moved to confirm the Award.  (Dkt. No. 18.)  On October 15, 2012, Defendant cross-moved to vacate the Award and to dismiss the Complaint.  (Dkt. No. 21.)  The Court held oral argument on July 18, 2013.  Following oral argument, the Court requested supplemental briefing.  (Dkt. No. 36.)  The Parties' supplemental briefs and supporting materials were received on July 25, 2013.  (Dkt. Nos. 37, 38.)

## II. Discussion

### A. General Principles

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).  Thus, "'absent an agreement to arbitrate, [the Second Circuit] ha[s] recognized only limited theories upon which [it is] willing to enforce an arbitration agreement against a non-signatory.'"  *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Custom Air Sys., Inc.*, 357 F.3d 266, 268 (2d Cir. 2004) (per curiam) (quoting *Merrill*

---

[2] The Complaint notes that this Court has jurisdiction to hear this dispute pursuant to 29 U.S.C. § 185, which confers upon district courts the authority to hear claims "for violation of contracts between an employer and a labor organization"; 29 U.S.C. § 1132, which confers upon district courts the authority to hear disputes involving organizations regulated by ERISA; plus derivative jurisdiction conferred by 28 U.S.C. §§ 1331 and 1337.  (Compl. ¶ 1–4.)  Defendant does not challenge this Court's exercise of jurisdiction, and the Court is satisfied that this suit is properly in federal court.

*Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003)).

Courts "use general contract law principles to determine whether the parties agreed to arbitrate disputes and to ascertain and implement the reasonable expectations of the parties." *MI Installers & Furniture Serv., Inc. v. N.Y.C. Dist. Council of Carpenters Pension Fund*, 476 F. Supp. 2d 387, 390 (S.D.N.Y. 2007) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Moreover, while a "presumption of arbitrability exists in disputes arising out of a collective bargaining agreement," the presumption "does not extend to the third-party beneficiaries to a collective bargaining agreement, *e.g.*, employer benefit funds." *Id.* at 390 (citing *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 372 (1984)); *see also N.Y. City Dist. Council of Carpenters Pension Fund v. TADCO Constr. Corp.*, No. 07-CV-2712, 2008 WL 540078, at \*7 (S.D.N.Y. Feb. 28, 2008) ("The presumption of arbitrability that normally exists in a dispute between an employer and a union that arises from a collective bargaining agreement does not apply to a dispute between an employer and the trustees of an employee benefit fund, even if the dispute relates to a collective bargaining agreement." (citation omitted)).

### B. There Was No Agreement to Arbitrate This Dispute

Plaintiffs contend that this is a simple case indeed, and the argument section of their opening Memorandum of Law in support of their Motion is barely more than three double-spaced pages. (Pl.'s Mem. 3–6.) "[T]here is no factual dispute," they contend. (Pl.'s Mem. 5.) Their view of the case is as follows:

> [D]efendant entered into a collective bargaining agreement in which [it] agreed to contribute to the Local 30 Benefit Funds. Therefore, [Defendant is] bound by the Local 30 Benefit Funds plan documents. [P]laintiffs sought to conduct an audit and [D]efendant refused to cooperate. The Plaintiffs' collection policy allows [P]laintiffs to take a dispute to arbitration. An arbitration was held. Defendant did not make an appearance and an award was issued. The award called for [D]efendant to allow the audit and to pay [P]laintiffs' attorneys' fees and arbitration costs

5

pursuant to the collection provisions . . . of the Funds' Trust Agreements.
    There are no infirmities in the arbitration award and so the
arbitration award should be confirmed and enforced.

(Pl.'s Mem. 5–6.)

A careful reader will notice that something is already amiss.  In this passage, Plaintiffs contend that it was the Funds' "collection policy," a document appended to the Trust Agreement, that "allows [P]laintiffs to take a dispute to arbitration."  Yet the arbitrator stated in the Award that the arbitration was conducted "[p]ursuant to the provisions of the *Collective Bargaining Agreement* between the [Defendant] and the [Union]."  (Award 1.)  And the distinction between the two sources of authority determines the outcome of this case.  In fact, as Plaintiffs acknowledge, because Plaintiffs are not parties to the CBA, their only possible sources of authority to arbitrate this dispute are the Trust Agreement and the accompanying Collection Policy.  But Defendant is not a party to either of those documents, and the law in the Second Circuit is that an employer is not bound by non-essential provisions of plan documents not signed by the employer that pays into a fund.  Thus, the Court concludes that the Award is not enforceable in federal court.

### 1. The Second Circuit Rule: Whether a Provision Is "Essential" to the Management of the Funds

The arbitrator invoked as his source of authority the CBA, a clearly impermissible source of authority for arbitration, and a source of authority that is manifestly incorrect.  Indeed, before this Court, Plaintiffs have abandoned this theory of jurisdiction.[3]  Rather, Plaintiffs here invoke

---

[3] Perhaps because the arbitrator's invocation of jurisdiction is so clearly incorrect, Plaintiffs are occasionally inconsistent in places about the source of authority invoked by the arbitrator.  In a sworn declaration submitted to this Court, an associate at the law firm representing Plaintiffs declared that "said Award provided that the Defendant was required to submit to an [a]udit pursuant to the Trust Indenture and the Funds' Collection Policy."  (Khalaf Decl. ¶ 13.)  As mentioned, that is only partly true.  The arbitrator found that Defendant "failed to comply with the Collection Policy . . . as it relates to allowing an audit of [Defendant's] books

the Trust Agreement and the appended Collection Policy as the source of arbitration jurisdiction. (Pl.'s Reply 7.)  In so doing, Plaintiffs concede that Defendant is not actually a party to the Trust Agreement, but they argue that "[o]nce an employer makes contributions to a benefit fund pursuant to a collective bargaining agreement, that employer is bound by the benefit fund's trust agreement."  (*Id.* (citing *Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co.*, 932 F.2d 1443, 1450 (11th Cir. 1991), and *N.Y. State Teamsters Conference Pension & Retirement Fund v. Boening Bros., Inc.*, 92 F.3d 127, 133 (2d Cir. 1996)).)  Because Defendant contributed to the Funds at one point, Plaintiffs contend Defendant is bound by every provision in the Trust Agreement.[4]  (Pl.'s Reply 7.)

The legal landscape in this area is defined by a pair of 1996 Second Circuit cases.  First, in *Jaspan v. Glover Bottled Gas Corp.*, 80 F.3d 38 (2d Cir. 1996), the Second Circuit held that an employer that had made contributions to a benefit fund pursuant to a CBA with a union "did not bind itself to a liquidated damages provision contained in a governing trust agreement to which [the employer] never agreed."  *Id.* at 42.  In holding that the employer was *not* bound by that specific provision, the *Jaspan* court explicitly rejected the "broad language" of the Eleventh Circuit's decision in *Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Construction Co.* stating that "non-signatory contributing employers [are bound] to terms of trust

---

and records," (Award 3), but the arbitrator specifically stated that his *authority* to arbitrate the dispute was pursuant to the CBA and not the Collection Policy, (Award 1).

[4] This *de facto* agreement doctrine is Plaintiffs' sole argument that Defendant is bound to the Trust Agreement.  This is noteworthy because, while the Trust Agreement does contain a definition of "Employer" for purposes of the Trust Agreement, that definition includes only Employers who have "agree[d] to be bound by the terms and provisions of this Agreement and Declaration of Trust."  (Trust Agreement 4.)  As Defendant notes, there is no evidence in the record that Defendant ever manifested such agreement, (Def.'s Sur-reply 6 n.7), and Plaintiffs do not argue in their moving papers that there was such an agreement.

agreements governing the fund to which they contributed." *Id.* at 41.[5]  Instead, the Second

Circuit in *Jaspan* applied a narrower approach to an employer's obligations.  Under this

approach, a court asks whether a given provision in a trust agreement is "essential to [the

trustees'] management of the Funds in the same way as is the right to audit to make sure

contributing employers have contributed in accordance with their obligations." *Id.*

A few months later, the Second Circuit applied that test in *New York State Teamsters

Conference Pension & Retirement Fund v. Boening Bros., Inc.*, 92 F.3d 127 (2d Cir. 1996),

which is the primary case relied on by Plaintiffs.  In *Boening Brothers*, the Second Circuit held

that under ERISA, the trustees of a benefit fund were entitled to identify and collect delinquent

employer contributions through a payroll audit, even though the employer was not a party to the

governing trust agreement. *Id.* at 134.  The court in *Boening Brothers* restated that in *Jaspan* the

Second Circuit had "declined to apply the 'broad language' of *Vertex*" and instead applied a

narrower, claim-specific test for determining whether an employer is bound by a provision of a

trust agreement. *Id.* at 133 (quoting *Jaspan*, 80 F.3d at 41); *see also Concourse Vill., Inc. v.

Serv. Empls. 23BJ N. Health Benefit Fund*, No. 11-CV-7824, 2012 WL 5462662, at *9

(S.D.N.Y. Nov. 8, 2012) ("*Boening Brothers* has not been extended to mean that employers must

submit to all terms of trust agreements to which they are not signatories simply by virtue of the

employee benefit funds themselves invoking the terms of the trust agreement.").  Consistent with

this limitation, the *Boening Brothers* court concluded that the fund was authorized only to

"conduct an audit that is no broader in scope than necessary to achieve its objective and no more

extensive than the scope of the trustees' authority."  92 F.3d at 134.

Under Second Circuit caselaw, then, Defendant is not a *de facto* party to the *entire* Trust

---

[5] The *Jaspan* court also rejected similar language in *Santa Monica Culinary Welfare
Fund v. Miramar Hotel Corp.*, 920 F.2d 1491 (9th Cir. 1990).  *See* 80 F.3d at 41.

Agreement at issue here.  Rather, the relevant legal question is whether Defendant is bound to any particular provision in the Trust Agreement that would authorize Plaintiffs to request *of an arbitrator* that Defendant be subjected to a books and records audit.  In answering this question, the Court is aware that, under *Boening Brothers*, Plaintiffs are doubtless "authorized, in implementation of [their] fiduciary duties, to conduct an audit that is no broader in scope than necessary to achieve its objective and no more extensive than the scope of the trustees' authority."  *Boening Bros.*, 92 F.3d at 134.  But the fact that Plaintiffs have the substantive right to request a payroll audit in appropriate circumstances does not mean that Plaintiffs may enforce such a right through the mechanism of arbitration.

## 2. The Right to Obtain a Payroll Audit Through Arbitration Is Not "Essential"

Plaintiffs contend that, for purposes of instituting arbitration, they "relied not on a CBA but invoked the arbitration provisions contained in their own fund documents, specifically: Section 4.03(j) of the Trust Agreement and Declaration of Trust, and Section[s] 5 and 7 of the Collection Policy which give the Plaintiff[s] the sole discretion to take any dispute to arbitration."  (Pl.'s Reply 7.)  At oral argument, Plaintiffs invoked for the first time Section 4 of the Collection Policy, and hence the Court ordered supplemental briefing to address the impact of that Section.  (Dkt. No. 36 at 1.)[6]  At the same time, the Court also ordered supplemental briefing to give the Parties another chance to address whether, assuming such a right appears in the Trust Agreement or Collection Policy, such a right is "the kind of 'essential' provision of the

---

[6] In particular, the Court asked the Parties to address the following questions regarding Section 4: "Does Section 4 of the Collection Policy define 'legal action' for purposes of Section 7?  Does the final sentence of Section 4 — which states that '[i]n addition to all other remedies under this Agreement, the Trustees, at their discretion, may pursue other remedies including, but not limited to arbitration' — apply to *any* potential remedy under the Collection Policy, or is it confined to disputes where Plaintiffs contend that a 'payment [has] not [been] received,' as stated in the preceding sentence of Section 4?"  (Dkt. No. 36 at 1.)

Fund documents such that Defendant is bound by it simply by having paid into the Funds." (*Id.* at 1–2.)  After receiving the supplemental briefs, the Court concludes that it need not address whether the Collection Policy contains an arbitration provision that covers payroll audits because, even assuming the Collection Policy can be construed to contain such a provision, it is not essential to the Trustees' management of the Funds, and so any arbitration provision that appears solely in the Collection Policy is not enforceable against Defendant, which is not a party to the Trust Agreement nor the Collection Policy.

In determining whether such an arbitration right is essential to the management of the fund, it is useful to begin with the elementary proposition that a plaintiff with a potentially viable cause of action may not necessarily vindicate that right in the legal venue of its choosing.  For instance, the "[f]ederal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (internal quotation marks omitted).  Just a few of the many substantive obstacles to litigating in the federal courts include that the amount in controversy must exceed $75,000 in a diversity case, *see* 28 U.S.C. § 1332; that a defendant must have "sufficient contacts" with the forum state such that a court's exercise of personal jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice," *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011); and that the particular venue a plaintiff initially chooses not be inconvenient to parties and witnesses, *see* 28 U.S.C. § 1404.  In other words, whether a viable cause of action exists and whether that cause of action may be brought in a particular forum or venue by a particular plaintiff are entirely separate issues.

Here, the right under consideration is the right to arbitrate a dispute over a payroll audit, not the substantive right to obtain such an audit.  And there is no basis to conclude that the right

to arbitrate this dispute is "essential to [the trustees'] management of the Funds." *Jaspan*, 80 F.3d at 41. Indeed, despite having the chance to address this question in two primary briefs, and then being expressly asked after oral argument to address this question by the Court, Plaintiffs have failed to submit a single sentence of legal argument for why suing Defendant in federal court in the first instance is a major impediment to the management of the Funds. In their initial briefs, Plaintiffs erroneously relied on the Eleventh Circuit's inapplicable decision in *Vertex*; in their supplemental brief, they simply ignored the question the Court posed. Thus, the Court could rule in Defendant's favor by holding that Plaintiffs have waived any argument on this point. *See Chevron Corp. v. Donziger*, No. 11-CV-691, 2013 WL 4045326, at *1 n.3 (S.D.N.Y. Aug. 9, 2013) (noting that the plaintiff there "ha[d] waived [an] argument by failing to develop it"); *Lyn v. Inc. Vill. of Hempstead*, No. 03-CV-5041, 2007 WL 1876502, at *16 n.13 (E.D.N.Y. June 28, 2007) ("Issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . ." (internal quotation marks omitted)).[7]

---

[7] Specifically, Plaintiffs' supplemental brief reproduces and addresses only the Court's first question — the one asking for the Parties' views on the interpretation of Section 6 of the Collection Policy — and ignores the second question entirely. (Pl.'s Supp. Br. 1.) There is a small chance this omission was initially unintentional. The Court has noticed that, in the text entry on the electronic docket sheet accompanying the Court's supplemental briefing order, the Court's first question is the only question reproduced, even though the signed order itself contains both questions. (*Compare* Dkt. No. 36 (Order), *with* Dkt. Sht. Entry for Dkt. No. 36.) Of course, ignoring the Court's official order in favor of the shortcut of relying on the summary on the docket sheet is a risky habit, and indeed the Southern District of New York recently added a new ECF Rule stating that "[a]ll Filing and Receiving Users have an obligation to review the Court's actual order, decree or judgment, as available on ECF, and should not rely on the description of such order, decree or judgment in the Notice of Electronic Filing (NEF) alone." S.D.N.Y. ECF Rule 4.3 (effective July 19, 2013). That Rule went into effect before Plaintiffs' supplemental brief was submitted.

But even if Plaintiffs' failure to address the issue was an oversight initially, their failure to correct any mistake is curious, because Defendant's supplemental brief, filed on July 25, 2013, *does* address this critical question. (Dkt. No. 38.) Plaintiffs would have been

On the merits, even though no court seems to have addressed the precise question at issue here, Defendant points to ample authority for the proposition that a suit in federal court to compel a payroll audit is more than an adequate forum for resolution of a dispute over trustees' audit rights.  For instance, as the Seventh Circuit stated in a case holding that the trustees there need not be compelled to arbitrate a dispute regarding a payroll audit, "[n]ot only is there no federal presumption in favor of arbitration in disputes regarding trust fund contributions, but Congress has affirmatively opened the federal courts to trust funds so that they might enforce an employer's obligations."  *Pipe Fitters' Welfare Fund, Local Union 597 v. Mosbeck Indus. Equip., Inc.*, 856 F.2d 837, 839 n.1 (7th Cir. 1988).  As that court pointed out, in 1980 ERISA was amended to grant benefit funds the specific, statutory right "to bring an action in federal district court to enforce" employer obligations to make contributions.  *Id.* (citing 29 U.S.C. §§ 1145, 1132(g)(2)).)  Indeed, trust funds regularly take advantage of this right and bring actions in federal court seeking to compel payroll audits of employers.  Yet Plaintiffs give no explanation for why that right is not good enough for the efficient management of their Funds. The existence of this federal right, and its long-established efficient use by fund trustees, means that the right to arbitrate a dispute over a payroll audit must not be "essential."

This determination is also in line with *MI Installers & Furniture Serv., Inc. v. N.Y.C. Dist. Council of Carpenters Pension Fund*, 476 F. Supp. 2d 387 (S.D.N.Y. 2007), though the two cases are not identical.  In that case, the trust agreement at issue contained a provision stating that "'[n]othing in this section [which details the consequences of failure by an Employer to

---

electronically served with Defendant's submission, and surely they would have read Defendant's submission and seen that it does address the second question.  Yet, the Court has not heard from Plaintiffs at all since they filed their supplemental brief; there has been no request to supplement their latest filing to address this critical question.  At this point, then, the Court can only conclude that Plaintiffs have nothing to say on the issue.

make required contributions to the Fund] shall be construed as a waiver or limitation on the Trust Fund's or the Trustees' right to enforce an Employer's Contribution obligation through any type of proceeding including litigation in state or federal court or arbitration.'" *Id.* at 393 (alterations in original) (quoting the trust agreement at issue).   The court in *MI Installers* held that this section of the agreement did not create an independent, free-floating right of the trustees to arbitrate; instead, that provision referred to the more specific right "of the Trustees to enforce an employer's contribution obligation, defined [elsewhere] and limited to litigation in a district court." *Id.*  In other words, because the "mention of 'arbitration,' . . . does not derive from any identifiable right of the Trustees in the Agreement," that provision of the trust agreement did not replace the specific instances where the parties agreed to submit to arbitration with a general right to arbitrate all disputes.  *Id.*  Though the court did not directly address the separate question of whether the right to arbitrate was so "essential" to the management of the funds that it must be incorporated, the outcome — that the federal courts would be good enough to vindicate any rights the funds may have against an employer — comports with that here.

Moreover, in *MI Installers*, the court noted that it was "atypical" for a benefit fund to be the party seeking to arbitrate a dispute, because historically it was *employers* that "attempted to mandate the participation of benefit funds in arbitration proceedings."  476 F. Supp. 2d at 391. The same unusual posture is presented here.  While the Court need not delve into the reasons that either party has for preferring arbitration versus litigation in federal court, this history is additional evidence that the right to arbitrate is not essential to the management of a benefit fund. To the contrary: it indicates that, in many instances, it is the benefit funds that prefer to go to federal court. *Cf. Local 8A-28A Welfare & 401(K) Ret. Funds v. Millard Grp., Inc.*, No. 03-CV-8672, 2004 WL 305729, at *3 (S.D.N.Y. Feb. 18, 2004) (noting that the funds there were not

*required* to arbitrate the dispute because "[e]ach of the Trust Agreements empowers the Trustees to 'take whatever proceedings may be proper and necessary in their discretion for enforcement of an Employer's obligations including but not limited to proceedings at law and in equity and arbitration and any remedies which would be generally available to the parties for enforcement of' the CBA" (quoting the trust agreements at issue)).[8]

Plaintiffs have also submitted an affirmation from the Fund Administrator stating that "[s]ince June 24, 2008, all employ[ers] who have failed to cooperate with an audit have been taken to arbitration."  (Decl. of Angelo DePietto (Dkt. No. 41) at 2.)[9]  But the fact that Plaintiffs have preferred arbitration for the last several years and that other employers may have consented to it — or they may not have consented; there is no way to tell based on this record — in no way shows that such a right is essential to the management of the funds.  Rather, the right at issue seems similar to the liquidated damages clause at issue in *Jaspan*: perhaps nice for Plaintiffs to

---

[8] Plaintiffs rely principally on *N.Y.C. District Council of Carpenters Pension Fund v. TADCO Construction Corp.*, No. 07-CV-2712, 2008 WL 540078 (S.D.N.Y. Feb. 28, 2008), a case that confirmed the order of an arbitrator compelling an employer to submit to a funds' request to furnish books and records. (Pl.'s Reply 6.)  The *TADCO* court, however, did not address the question whether the right to arbitrate was so essential to the funds' management that it must be incorporated into the agreement.  *See also Dodge Hyundai of Paramus v. United Welfare Fund, Welfare Div.*, No. 11-CV-979, 2011 WL 4356373, at *6 (E.D.N.Y. Sept. 16, 2011) (granting the funds' petition to compel arbitration in a dispute regarding delinquent contributions where "the Trust Agreement explicitly grants the Funds the right to initiate arbitration proceedings to collect delinquent contributions" and where the Trust Agreements were incorporated into the CBA).  Moreover, there, the court also found that the employer "participated in the arbitration without objecting to the dispute's arbitrability."  *TADCO*, 2008 WL 540078, at *5.  But "[i]t is well settled in this Circuit that, if a party participates in arbitration proceedings without making an explicit objection to the submission of the dispute to arbitration, that party may be found to have effectively waived its right to object to the arbitration later."  *Id.* at *4.  Here, by contrast, Defendant did not participate in the arbitration, and indeed it has challenged whether it was even given notice of it.

[9] Actually, the affirmation says that "all *employees* who have failed to cooperate with an audit have been taken to arbitration."  (Decl. of Angelo DePietto (Dkt. No. 41) at 2 (emphasis added).)  The Court assumes the reference to "employees" is a typo.

have, but not so critical that Plaintiffs may force an arbitration without Defendant's having

agreed to it.  *See Jaspan*, 80 F.3d at 41; *cf. King v. Marco Eugene Trucking Co.*, No. 98-CV-

5077, 2002 WL 32096574, at *3–4 (E.D.N.Y. Feb. 15, 2002) (plaintiff trustees did not have

authority unilaterally to amend a collection policy that was in tension with the terms of the CBA

despite the trustees' contention "that enacting the policy is a legitimate response to an identified

problem, and is thus required in order to meet their fiduciary burden").  Therefore, Defendant

cannot be considered to have agreed to arbitrate this dispute, either expressly or by virtue of its

payment into the Funds.

### C. Defendant Has Not Waived its Right to Challenge the Arbitration

Plaintiffs also contest Defendant's right to challenge the arbitration proceeding on the

ground that Defendant did not move for vacatur of the Award within ninety days of the Award's

issuance.  (Pl.'s Reply 3.)  The ninety-day limitations period is drawn from N.Y. C.P.L.R.

§ 7511(a), which provides that "[a]n application to vacate or modify an [arbitration] award may

be made by a party within ninety days after its delivery to [the party]."  That state law applies

because it is incorporated by reference as the limitations period governing petitions to confirm

arbitrations brought pursuant to § 301 of the Labor Management Relations Act.  *See Local 802,*

*Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998)

("Because Congress did not provide a statute of limitations for suits brought under § 301, this

Court determines the statute of limitations for the federal cause of action by looking to the most

appropriate state statute of limitations," namely § 7511).

However, the Second Circuit recognized an exception to the application of the statute of

limitations in *Local Union No. 38, Sheet Metal Workers' International Ass'n, AFL-CIO v.*

*Custom Air Systems, Inc.*, 357 F.3d 266, 268 (2d Cir. 2004) (per curiam).  Under that exception,

a party's argument that it never signed any agreement to arbitrate in the first place does not trigger the ninety-day statute of limitations.

In *Local 38*, the Union plaintiff obtained an arbitration award against defendant Custom based on a violation of the CBA that allegedly governed the parties' relationship. *Id.* at 267. The arbitrator had found that, although Custom was not a signatory to the CBA at issue, Custom was nonetheless required to submit to arbitration because it was an "alter-ego" of the employer that truly was a party. *Id.* Custom did not contest jurisdiction at the arbitration nor did it file a motion to vacate in federal court within ninety days of the award. *Id.* When the Union moved in federal court to confirm the award, Custom raised as a defense that it had never agreed to submit to arbitration. *Id.* The district court held the defense time-barred. *Id.*

On appeal, the Second Circuit acknowledged prior caselaw holding that "grounds for vacating an arbitration award . . . may not be raised as an affirmative defense after the period of ninety days as provided in N.Y. C.P.L.R. § 7511(a) has lapsed." *Id.* But, "where the plaintiff is unable to make a threshold showing that the non-signatory was bound to arbitrate under one of . . . five theories [including the alter-ego theory], the non-signatory is considered a non-party to the CBA and the case against it must be dismissed. *In such a situation the statute of limitations issue is not even reached*." *Id.* at 268 (emphasis added). This flows from the general principle that "[o]rdinarily, binding a non-signatory to [an arbitration agreement] runs afoul of the fundamental premise that 'a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.'" *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigator Co.*, 363 U.S. 574, 582 (1960)).

*Local 38* thus creates an exception to the broader rule, stated in *Parker Meridien*, that "grounds for vacating an arbitration award" — including the general assertion that the arbitrator lacked jurisdiction over a dispute — "may not be raised as an affirmative defense after the period provided in the appropriate statute of limitations governing applications to vacate an arbitration award has lapsed (in New York's case, ninety days)." *Parker Meridien*, 145 F.3d at 89.  The exception applies where — as here — a defendant is a "non-signatory" to the relevant agreement purporting to grant the plaintiff the right to arbitrate a dispute.  In such a case, the statute of limitations "is not even reached" in the first instance, and the burden is on the plaintiff to show that "for all relevant purposes, the non-signatory is legally equivalent to the signatory and is itself a party to the" relevant agreement, which would trigger the statute of limitations.  *Id.*

Plaintiffs have not made such a showing.  First, by Plaintiffs' own admission and as explained in detail above, Defendant is a "non-signatory" and "non-party" to any agreement with Plaintiffs to arbitrate.  *See Local 38*, 357 F.3d at 268.  Second, as also explained above, Plaintiffs have not proved that any of the five theories that could render Plaintiff and Defendant *de facto* parties to an agreement to arbitrate applies here.  Plaintiffs have essentially tried to claim that either "incorporation by reference" or "assumption" applies to bind Defendant to a contract with Plaintiffs containing an arbitration provision — that is, Plaintiffs have argued either that the provisions in the Collection Policy are incorporated by reference into the CBA, or that the Defendant assumed all of the obligations of the Collection Policy merely be paying into the Funds.  *See id.* ("'[A] willing signatory . . . seeking to arbitrate with a non-signatory that is unwilling . . . must establish at least one of the [following] five theories . . . 1) incorporation by

reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; [or] 5) estoppel.'" (quoting *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (per curiam))). But, for the reasons explained in the preceding section, those doctrines do not apply to bind Plaintiffs and Defendant to a mutual agreement to arbitrate.

The *TADCO* court's analysis was similar.  "In order to resolve" the question of whether the defense was time-barred, "the Court must first find that the dispute was or was not arbitrable." *TADCO*, 2008 WL 540078, at *7.  Because the court in *TADCO* found the dispute there was arbitrable, it held that the employer's motion to vacate was time-barred. *Id.* at *8.  But the opposite is true here: because the dispute was *not* arbitrable on the particular grounds that Defendant was never party to any relevant agreement with Plaintiffs, Defendant's motion to vacate is *not* time-barred.

To be sure, this logic might at first blush seem to put the merits of arbitrability before the statute of limitations question.  At a high level, the rule seems to be that when the dispute is arbitrable, a defendant is time-barred from arguing that the dispute is not arbitrable; but when the dispute is not arbitrable, then the Defendant is not time-barred from arguing that the dispute is not arbitrable.  But the key to understanding why the inquiry proceeds in this manner is the *Local 38* court's statement that, where a defendant has never agreed with the plaintiff to any contract containing a provision authorizing arbitration of the dispute, "the statute of limitations issue is not even reached." *Local 38*, 357 F.3d at 268.  Here, to the Court's knowledge, the Funds and Defendant have never mutually agreed to *any* contract, much less a contract that contains an arbitration clause.  Where lack of an agreement to arbitrate in the first place is the nature of the jurisdictional challenge, the *Local 38* exception applies, and the ability of Defendant to challenge an arbitration award on this ground is not affected by the ninety-day

18

statute of limitations — unless Plaintiffs could show that Defendant really was a *de facto* party to the relevant agreement.[10]  Plaintiffs have not done so.  Thus, the Court need not reach whether the other, more "traditional" arguments against confirmation raised by Defendant are time-barred.

### III. Conclusion

For the forgoing reasons, Plaintiffs' Motion to Confirm the Arbitration is denied, (Dkt. No. 18), and Defendant's Motion to Dismiss is granted, (Dkt. No. 21).  The Clerk of Court is respectfully directed to terminate the aforementioned motions, enter judgment for Defendant, and close this case.


SO ORDERED.

DATED:          White Plains, New York
                September 27 , 2013

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE


---

[10] Put differently, the general rule is that a defendant must bring a motion to vacate an arbitration award for lack of jurisdiction within ninety days of the issuance of the award; the narrow exception is that where a defendant contends the arbitrator lacked jurisdiction for certain particular reasons, including the reason that the defendant was a "non-party" to any agreement that purports to create jurisdiction to arbitrate, then the ninety-day statute of limitations does not apply.  In *Parker Meridien*, the plaintiff Union and defendant Employer were both parties to the CBA that allegedly gave the Union the right to arbitrate, *see* 145 F.3d at 87, and so the ninety day limitations period was triggered.  But unlike in *Parker Meridien*, Defendant here is a "non-signatory" and "non-party" to the relevant agreement, which is why the *Local 38* exception applies.  357 F.3d at 268.